Hillsborough-northern judicial district
No. 2003-406

## THE STATE OF NEW HAMPSHIRE

v.

## PETER LEONARD

Argued: March 11, 2004
Opinion Issued: June 29, 2004

*Peter W. Heed*, attorney general (*Laura E. B. Lombardi*, assistant attorney general, on the brief and orally), for the State.

*David M. Rothstein*, deputy chief appellate defender, of Concord, on the brief and orally, for the defendant.

BRODERICK, C.J. The defendant, Peter Leonard, was charged with one count of incest and twelve counts of aggravated felonious sexual assault. *See* RSA 639:2 (Supp. 2003); RSA 632-A:2 (Supp. 2003). He brings this interlocutory appeal from an order of the Superior Court (*Mangones*, J.) directing his counsel to provide "tutelage in the law" to render him competent to stand trial. We reverse and remand.

Dr. James Adams, chief forensic psychiatrist for the department of corrections, evaluated the defendant and concluded that he was not competent to stand trial. It was determined that he suffered from borderline intellectual functioning, a variety of learning disabilities and defects in expressive language, and illiteracy. Dr. Adams reported that the defendant had deficits in his ability to testify, to undergo cross-examination and to withstand the interpersonal pressures related to the trial process. As the trial court's order states, the defendant was "very inarticulate and require[d] considerable effort at times to elicit the information he knows in the face of his communications defects." In addition, the order states that the defendant was "prone to give up on expressing himself accurately or demanding a clear understanding of what is asked and to in fact give facile answers which are not necessarily accurate or truly responsive." Although Dr. Adams concluded that the defendant's borderline intellectual functioning and learning difficulties were likely congenital and that he demonstrated little prospect for fundamental change in his mental state, he testified that "it is likely" that the defendant could be rendered competent.

The trial court ruled that the defendant was not competent to stand trial but that there was a reasonable probability that his competence could be restored "with appropriate services of legal counsel." Consequently, the court ordered the defendant's attorneys to "provide duly diligent defense services, within legal and ethical standards, in terms of trial preparation and explanation" and that the defendant be re-evaluated for competency "just prior to trial." Defense counsel subsequently spent several weeks attempting to "educate" the defendant. Concluding that their efforts were unsuccessful, defense counsel moved to dismiss the indictments without prejudice. The trial court then ordered the defendant to undergo a follow-up competency exam with Dr. Adams. Defense counsel objected, arguing that the competency statute did not authorize referral to Dr. Adams, who was not the "treating psychiatrist." The trial court agreed to stay the evaluation pending the outcome of this interlocutory appeal.

The defendant argues that the trial court should have dismissed the indictments because it found him incompetent to stand trial but did not order him to undergo psychiatric treatment. The defendant contends that the competency statute, RSA 135:17-a (Supp. 2003), "only permits the court to subject an incompetent defendant to psychiatric, or related, treatment" and "does not authorize any other treatment options - including 'legal therapy' by defense counsel." The State argues that because not all defendants require psychiatric treatment to be restored to competency, RSA 135:17-a should be construed to permit trial courts to

order a broad range of competency restoration treatments not limited to psychiatric or mental health treatment.

RSA 135:17-a, I, provides that if the trial court finds a defendant not competent to stand trial, it must order "treatment for the restoration of competency" unless it determines the defendant cannot be restored to competency within twelve months. If the court determines that the defendant "is to undergo treatment to restore competency," the defendant may be "treated" in the state mental health system or at the secure psychiatric unit under an order for involuntary admission pursuant to RSA chapter 135-C, or the defendant may be placed on bail under court order for an "appropriate course of treatment to restore competency." RSA 135:17-a, II.

Once the trial court has issued an order "committing [a] defendant for treatment," a further hearing must be held within twelve months to assess the defendant's competency. RSA 135:17-a, III. Prior to this further hearing, the "treating psychiatrist" is obligated to conduct a further competency evaluation. *Id.* Following the hearing, if the trial court determines that the defendant has regained competency, the matter must be docketed for trial. If the defendant remains incompetent, the case must be dismissed without prejudice. RSA 135:17-a, IV.

If, however, the incompetent defendant is determined to be dangerous, the trial court must order the defendant to remain in custody and be "evaluated [to determine] the appropriateness of involuntary treatment." RSA 135:17-a, V. For the purpose of "evaluating appropriateness" and involuntary admission into the "state mental health services system, the state developmental services delivery system, or the secure psychiatric unit," the court may order the defendant to submit to examinations by a "physician, psychiatrist, or psychologist." *Id.* Finally, if a person is involuntarily committed, the "treating physician, psychiatrist, or psychologist" must report to the court if at any time the person regains competency to stand trial before the statute of limitations for the original criminal offense has expired. RSA 135:17-a, VI.

This court is "the final arbiter of the intent of the legislature as expressed in the words of a statute considered as a whole." *Snedeker v. Snedeker*, 145 N.H. 19, 20 (2000) (quotations omitted). "As in all cases involving statutory interpretation, the starting point is the language of the statute. We construe each statute as a whole, and if the statute's language is clear and unambiguous, we do not look beyond the language of the statute to discern legislative intent." *State v. Whittey*, 149 N.H. 463, 467 (2003) (citation omitted). "Where statutory language is not specifically defined, we look to the intent of the legislation, which is determined by examining the construction of the statute as a whole." *Appeal of House*

*Legislative Facilities Subcom.*, 141 N.H. 443, 446 (1996) (quotations and ellipsis omitted).

■ RSA 135:17-a requires that within twelve months of an order committing a defendant for treatment, a further hearing be held to assess the defendant's competency and that, prior to that second hearing, the "treating psychiatrist" must conduct a further competency evaluation. Construing the statute as a whole, we hold that RSA 135:17-a plainly contemplates that whatever course of treatment a trial court orders for the restoration of competency be under the supervision of a psychiatrist. The trial court erred, therefore, when it ordered "tutelage in the law" by the defendant's attorneys as the treatment in this case. Because the failure to appoint a psychiatrist to supervise the defendant's treatment is reversible error, we need not decide what types of "treatment" may be ordered under the statute.

■ In addition, any further competency evaluation of the defendant may not be undertaken by Dr. Adams. The statute dictates that such evaluation be undertaken by the defendant's "treating psychiatrist," a role that Dr. Adams does not fulfill. *See* RSA 135:17-a, III. Pursuant to this provision, it is presumed that the court ordered treatment under the supervision of a psychiatrist after a finding of incompetency, that the defendant participated in such treatment, and that the treating psychiatrist has conducted a further competency evaluation and provided additional guidance to the court on the success of the treatment. Dr. Adams, who met with the defendant only on the day of his initial competency evaluation, is not his "treating psychiatrist" within the intent of the statute.

*Reversed and remanded.*

Nadeau, Dalianis, Duggan and Galway, JJ., concurred.